(These cases, because of the pendency of petitions for rehearing, did not reach me in time to be published in their chronological order.—REPORTER.)

OLAFF ATKINSON, Appellant, v. THE CITY OF DAVENPORT.

Acceptance of Paving:   NOT ESTABLISHED.   In an action in which the final acceptance by the city of work under another paving contract was an issue under a counterclaim, the evidence showed that the work was completed late in the fall, and that inspection was deferred for some time because of snow; that on February 4th following, the city council passed a resolution condemning the pavement, and directing payment to be withheld till the proper quality of brick was substituted; that the plaintiff then wrote a letter offering to bring the brick up to standard as soon as the season permitted, whereupon, in consideration of this promise, the paving was paid for; that plaintiff subsequently did some repair work on the pavement, which was not shown to have been accepted by the city as a compliance with the contract; that plaintiff was aware that the city claimed that from one to two-thirds of the brick were defective; and that, though notified later to complete the contract, plaintiff had failed to do so.   *Held*, that the evidence sustained a finding that there had been no acceptance by the city.

*Appeal from Scott District Court.*—HON. A. J. HOUSE, Judge.

SATURDAY, DECEMBER 22, 1900.

THIS action was brought to recover a balance due from the defendant for paving done for it under contract. The defendant admitted that the work was done as alleged, and that the amount claimed therefor was unpaid, and pleaded,

as an offset to the amount due, damages for the failure of the plaintiff's assignors to do other paving for it according to the terms of another written contract. The case was tried to the court, and a judgment rendered for the defendant. The plaintiff appeals.—*Affirmed.*

*W. M. Chamberlain* and *Ely & Bush* for appellant.

*George W. Scott* for appellee.

SHERWIN, J.—The defendant's counterclaim is based on the ground that appellant's assignor did not furnish the quality of brick required by the contract.    To this the plaintiff replies that the brick used "were duly inspected by the defendant, and accepted" "before the same were placed in the said paving," and "that said brick were not manufactured by plaintiff or his assignor, but were purchased on the market, and paid for, * * * because said brick were inspected and accepted by defendant," and that the work was inspected, accepted, and paid for after its completion." The specifications for the work in question were made a part of the contract, and one clause thereof is as follows: "And no work shall be considered as accepted which may be defective in its construction, although the engineer may have failed to point out the defect during construction and before final acceptance of the work, and any work condemned by the engineer as defective or improperly done shall be taken up and rebuilt, or the defects otherwise remedied, as may be directed by the engineer and committee on paving." The contract further provided that the brick used for the top course should be of the very best and hardest selected brick, specially burned for street paving, and, further, that all brick used on that street should be equal to the best quality of Galesburg paving brick. While the work was in progress, the evidence tends to show that some inspection was made of the brick used, and that some that had been shipped in for use were rejected even

before they were taken from the cars, but no express acceptance of any brick used is shown while they were being put in.

There was a conflict in the testimony as to the quality of the brick used, but we think the trial court was fully justified in finding that a large part of them were not up to the grade required by the contract. In fact, the plaintiff himself, who was a member of the contracting firm, says that some of the brick used were the "most defective he had ever seen." It is clear that, under the terms of this contract, nothing but a final acceptance of the completed work would constitute a waiver as to the material used; hence the cases cited by the appellant to the effect that a failure to object will be presumed an approval, and that the city would be bound by errors in judgment of its inspector, and that acceptance by inspection is final, are not in point.

The only point remaining to consider is whether the city did finally accept the work, and on this there is a conflict in the evidence. The record shows the work to have been completed late in the fall of 1891, at just what time does not appear. There is evidence tending to show, however, that an inspection of the completed work was mutually temporarily abandoned on account of snow thereon, and that it was not finally inspected until some time later. On the 4th of February, however, the city council passed a resolution condemning the pavement, and ordering payment therefor withheld until the poor brick were taken out, and others of the quality required by the contract put in. This resolution seems in some way to have reached the ears of the contractors, for the plaintiff so testifies, and the letter following was soon thereafter received by the city authorities: "Davenport, Iowa, February 16th, 1892. S. F. Smith, Chairman of the Paving Committee of the City of Davenport—Dear Sir: Understanding that some parties make the statement that some of the top.

brick in the paving which we have done for the city of
Davenport are not equal to the samples presented by us at
the time of our contract with the city of Davenport, now,
in order to show our good faith, and of our own volition,
we take pleasure in saying that, when the proper season
comes in which said work can be done, we will, with the
paving committee and city engineer, carefully go over all
work done by us, and will at our own expense cheerfully
replace with brick equal to the sample any brick that may
be deemed inferior thereto.    Yours truly, Atkinson &
Oloff.''    Upon receipt of this letter, this action was taken
by the city council, February 17, 1892: ''Motion of Al-
derman Smith that balance due to Atkinson & Oloff for
paving of Front street be paid, in consideration of the exe-
cution of the foregoing agreement, was adopted;'' and the
balance due for said work, some $4,000, was thereupon
paid.    It is manifest from this record that there was no
acceptance of this work, at least before the action of the
council on the 17th day of February.    If this can be so
treated, it was conditioned upon the promise contained in
plaintiff's letter of the 16th, and was not an acceptance of
the work as it was at that time.

But plaintiff says that he and his partner afterwards
went to Davenport, and complied with the terms of his
contract and letter; but his own testimony does not show
any attempt on his part to replace the large number of
soft brick that had been put in the pavement.    He says
that he raised some depressed places and repaired around
the car tracks, where the brick had been forced up by the
ties.    No further work is shown, nor is it shown that the
city accepted this work as a compliance with his contract.
On the other hand, it appears that the plaintiff had full
knowledge of the city's claim that from one to two-thirds
of the brick used by them were unfit for paving purposes.
The resolution of February 4th was very broad, and of this
the plaintiff says he knew.    Verbal complaint was also

made to him, and there can be no question that he knew the full extent of defendant's claim when he made the repairs he did. In October of the same year the firm was again notified in writing to complete its contract by putting good brick in place of the poor ones, but it did nothing further in the matter. The finding of the trial court is sustained by sufficient evidence, and is AFFIRMED.