CENTRAL BITULITHIC PAVING CO. *v.* CITY OF MT. CLEMENS.

1. MUNICIPAL CORPORATIONS—PAVING CONTRACTS—SPECIFICATIONS —INCORPORATION IN CONTRACT.

Where a paving contract refers to the specifications attached thereto, and the specifications refer to the contract, in such a manner that neither can be entirely understood without the other, the specifications are a part of the contract though not signed by the parties.

2. SAME—STIPULATED DAMAGES FOR DELAY—VALIDITY OF PROVISION.

A provision in a paving contract, stipulating a certain amount as damages for each day's delay in completing the work, is within the power of the contractor to make, and is valid and binding upon him.

3. SAME—DAMAGES FOR DELAY—WAIVER.

Where a paving contract requires that the damages stipulated for delay in completing the work shall be paid before acceptance of the work, an acceptance of the work by the city council without any claim for damages for delay amounts to a waiver of such damages.

4. SAME—OFFICERS—AUTHORITY — CONTRACTS — MATERIALS FURNISHED—LIABILITY OF CITY.

A city is liable for the value of crushed stone furnished for and used in repairing its streets, though furnished in reliance upon a contract with its street commissioner and he has no authority to contract in behalf of the city.

Error to Macomb; Tucker, J. Submitted October 13, 1905. (Docket No. 55.) Decided March 5, 1906.

Assumpsit by the Central Bitulithic Paving Company against the city of Mt. Clemens upon a paving contract. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Clark, Jones & Bryant*, for appellant.

*Robert F. Eldredge*, for appellee.

McALVAY, J. Plaintiff brought suit against defendant for a balance claimed to be due upon a contract for paving a portion of a street in the city of Mt. Clemens, and for the price and value of 128 loads of crushed stone sold and delivered by plaintiff to defendant. The paving was done under a certain contract in writing between the parties. The crushed stone was sold to defendant under an oral agreement not connected with the paving contract. Defendant pleaded the general issue and gave notice, under the plea, of recoupment for damages under the contract on account of nonfulfillment by plaintiff. The following is the paving contract:

"Articles of agreement, made and entered into by and between the city of Mt. Clemens, a municipal corporation, of the first part, and the Central Bitulithic Paving Company, a corporation organized under the laws of the State of West Virginia, with its principal office at the city of Cincinnati, party of the second part,

" *Witnesseth:* That said second party agrees to pave South Gratiot avenue, in the city of Mt. Clemens, between Cass avenue and Terry street, in accordance with the plans, details and specifications therefor prepared by the city engineer and approved by the common council of said first party and now on file in the office of the city clerk, doing all of the work and furnishing all of the material needed therefor.

" That the said second party will begin work under this contract on the 15th day of October, A. D. 1902, and will carry on the work hereunder continuously and with all possible speed to the end. That the said streets of the said city of Mt. Clemens shall not be closed or obstructed by the laying of said pavement any longer than may be necessary, and that they will complete the work under this contract on or before the 5th day of November, A. D. 1902.

" It is understood, however, that in case of delays not occasioned by said party of the second part, or in case strikes, unusually heavy storms or acts of God delay the completion of said work, or in case the same shall be delayed or prevented by injunction or mandate issued by any court of record, said second party, having used all due diligence, shall have such time in addition to that

above provided for, for the completion of the work, as they shall have been delayed.

"That the said second party will and do hereby guarantee their work in the paving of said street in accordance with said specifications, for a period of five years from and after the date of the acceptance of said work by the common council of said city, and will save and keep said first party harmless from all damage because of defects in their said work, and will at their own expense make all repairs to said pavement made necessary by reason of defects in their said work for a period of five years after the date of such acceptance.

"That said first party hereby agrees to pay said second party for said pavement, when completed in accordance with said plans and specifications, the sum of two and $\frac{15}{100}$ ($2.15) dollars per square yard.

"This contract shall not effect, or have any force or validity, until said second party shall file with the city clerk of said city a bond with sufficient sureties or surety to be approved by the mayor of said city, in the penal sum of twenty-five hundred dollars, conditioned that the said second party shall in all and every respect, in the doing of said work, comply with the conditions and requirements of said plans, details and specifications and with the provisions of this contract, including the guaranty of the finished street in compliance with said contract and specifications for a period of five years from the date of its completion.

> "The Central Bitulithic Paving Co.,
> "By E. M. Ayers, Prest.   [Seal]
> "Dated the 6th day of October, A. D. 1902.
> "Martin Crocker, Mayor.
> "Henry C. Benton, City Clerk."

To this contract was attached a copy of the specifications not signed by the parties.

The main contention arises over the paragraph of the specifications which provides:

"And if the contractor shall fail to complete the work within the time specified in this contract, the sum of twenty-five dollars per day for each and every day thereafter, until such completion, shall be paid the city of Mt. Clemens through its common council by the said contractor before the acceptance of the work, provided that

all days on which work is suspended by written order of the common council shall be deducted from overtime, if any there be."

Upon this branch of the case the trial judge held that the specifications were a part of the contract, and rights under this paragraph had not been waived by the city. He also held that the sale of the stone to the city had not been made through any officer or agent duly authorized. A verdict was accordingly directed in favor of defendant of no cause of action. Upon these rulings and instructions errors are assigned.

The record shows that the work was begun in October, 1902, but was not completed at the time specified in the contract, November 5, 1902. On December 15th the council, by resolution, extended the time to complete the work to April 1, 1903. A dispute having arisen between the parties, on June 1, 1903, a resolution was adopted by the council rescinding the contract and ordering the street commissioner to remove the stone, etc., from the street and put it in a passable condition. This action was reconsidered June 15, 1903, and on this date plaintiff commenced the work of completing the pavement, which was accomplished July 4th. At the council meeting July 6th, the city engineer recommended that plaintiff be allowed $4,000, as a partial payment on its contract. This was received and filed, and plaintiff's bill was referred to the engineer, who was instructed to ascertain the actual cost of the work at the contract price, in order to determine the amount of rebate to property owners on their special assessments for this improvement which had been ordered. July 14, 1903, the council directed the surveyor to deliver this schedule to the city treasurer, and also ordered the city treasurer, as soon as collected, to pay plaintiff $4,000 from such fund to apply on its contract. This amount was collected, and paid a few days later. July 24, 1903, the engineer reported in writing to a meeting of the council that he found plaintiff had completed 3,014.43 square yards of pavement, amounting at the contract price to

$6,481.02, of which $4,000 had been paid. He recommended that, until further investigation, an allowance on the entire contract at the rate of $2 per square yard be paid, which would leave on that basis a balance due plaintiff of $2,028.86, and recommended the allowance of that amount. This report was unanimously adopted, and the mayor and clerk were authorized to draw the proper warrant. This balance was promptly paid. There was a mistake of 159.80 square yards in the engineer's estimate of the number of square yards which had been completed by plaintiff. This 159.80 yards, at $2.15 per square yard, added to 15 cents per square yard held back, amounts to $795.74, which is claimed by plaintiff to be due on the paving contract. No plans and details were attached to the contract, but it refers to them, as well as to the specifications, and provides that the paving is to be done in accordance therewith. The specifications in the record show that they were drawn with the intention of being attached to and made part of the contract to which they refer. For illustration, the following clauses disclose this intention:

"The first party shall not assign or transfer this contract or sublet any portion of the work. * * * Nor shall he give an order for the payment of any moneys upon this contract * * * except as against the net sum * * * authorized by this contract. * * *

"The work embraced in this contract shall be begun * * * and carried on * * * with such force so as to insure its full completion within the time specified in the contract. The time of beginning, rate of progress, and time of completion being essential conditions of this contract. If the contractor shall fail to complete the work within the time specified in this contract * * *.

"The contractor * * * shall pay * * * all indebtedness due * * * on account of any labor or material furnished in connection with this contract, of which these specifications form a part. * * * And the contractor hereby further agrees that he shall pay the city of Mt. Clemens * * * five dollars per hour for all time spent by said council in settling disputes or claims filed

under this clause or these specifications which are in all respects a portion of the contract."

Turning to the contract, we find the following recitals referring to these specifications:

"The said second party agrees to pave, * * * in accordance with the plans, details, and specifications therefor prepared by the city engineer, * * * do guarantee their work in accordance with said specifications. * * *

"Said first party hereby agrees to pay said second party for said pavement, when completed in accordance with said plans and specifications. * * *

"This contract shall not affect or have any force or validity until said second party shall file a bond * * * conditioned that said second party shall in every respect in the doing of said work comply with the conditions and requirements of said plans, details, and specifications, and with the provisions of this contract."

There is no question raised as to the identity of the specifications which were attached to the contract. Such reference is made, in each of these written instruments, to the other, that neither can be understood without examination of the other. The specifications in their entirety, by the terms of the contract, became a part of it. The paragraph in dispute fixing stipulated damages was within the power of plaintiff to make, and was valid and binding upon it. The action and proceedings of the council relative to this transaction are already fully set forth and need not be repeated. By the action of July 24th, the council understood that the balance ordered to be paid was the full contract price, less 15 cents per square yard, and, but for the error of the surveyor, this would have been done. This error came about by not allowing for certain pavement laid near the street-car track which the surveyor thought was to be paid by the street-car company. This appeared upon the trial and is not disputed by the defendant.

The trial judge held this action of the council, in adopting the surveyor's report on July 24th, together with the

payment of the money, without specific objections to the pavement, to be an acceptance by the city of the work performed by the plaintiff, so far as the quality of the work was concerned, and its completion according to the specifications, aside from the question of liquidated damages. He also held that by this action defendant waived the right to recover any greater sum than the amount remaining unpaid on the contract. We agree with the trial judge that the action referred to was an acceptance of the work performed under this contract. The specifications required the stipulated damages to be paid before the acceptance of the work performed under the contract, and, such work having been accepted without any claim or demand for damages to be paid by reason of delay in completing the same, we hold that such acceptance was a waiver of any and all stipulated damages. The trial judge erred in instructing the jury upon this question to find for the defendant.

Upon the claim of the plaintiff for crushed stone, it appears that the street commissioner, under the instructions of the street committee of the city council, went to plaintiff's foreman for this stone, and was informed he could have it for $2.25 per load. He sent the city teams and hauled away 128 loads. This crushed stone was used by the street commissioner in repairing the streets in the city wherever needed, under the direction of the street committee of the council. The street commissioner had the general supervision and care of all the streets in the city. In his official reports to the council of his doing for the periods during which this crushed stone was used, he included it, showing the amount, from whom obtained, and the price. These reports were filed with the city clerk. The record does not show that they were passed upon by the council. The trial judge instructed the jury that plaintiff could not recover for the crushed stone because the street commissioner had no authority to create liability against the city. This is not a claim based upon an agreement to improve the streets of the city, nor for

services rendered and accepted by it.   It is based upon the admitted appropriation and use of plaintiff's property by defendant without compensation.   Such cases were recognized by Mr. Justice Field, in *Argenti* v. *City of San Francisco*, 16 Cal. 255; and, although that case was not decided upon this question, his reasoning is cogent, and applicable to this case at bar.   He says:

"That doctrine (i. e., of implied liability) applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. * * *

"The money must have gone into her treasury or been appropriated by her, and, when it is property other than money, it must have been used by her, or be under her control."

Such is exactly the case at bar.   The fact that this property was taken, with plaintiff's consent, at an agreed price, cannot defeat a recovery.   It is an appropriation of property under such circumstances that the general law imposes upon the city the obligation to do justice.

We therefore hold that plaintiff is entitled to recover the value of this property, which the city has received and used in repairing its streets, and for which it has not paid, and of the receipt and user of which it had notice through its officers and the files and records of its official clerk. The court erred in instructing a verdict for defendant.

For the reasons above given the judgment is reversed, and a new trial is ordered.

GRANT, BLAIR, OSTRANDER, and MOORE, JJ., concurred.