[No. 10007. Department One. September 7, 1912.]

## N. J. MOREHOUSE, *Appellant*, v. CLERK OF THE CITY OF EDMONDS *et al.*, *Respondents*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ACCEPTANCE OF WORK —CONCLUSIVENESS. The failure of a city contractor to pay into a local improvement fund the amount of fixed charges, and to mix concrete by hand, as required by his contract, will not prevent recovery for the work on completion of the same, where the city engineer who had supervision of the work permitted mixing by a machine, and the governing body authorized by the contract accepted the work when completed; such acceptance being conclusive and a valid waiver of strict compliance with the contract.

SAME—ACCEPTANCE OF WORK. Acceptance· of public work by a "street committee" of the city council, required by the contract, is dispensed with by an independent acceptance by the city council which created the committee.

SAME—ACCEPTANCE—ENGINEER'S CERTIFICATE—WITHHOLDING. A city engineer, made by contract the judge of when the work is completed, cannot arbitrarily and capriciously refuse to accept a public improvement, or withhold his certificate because the contractor refused to bear the burden of the former's errors.

Appeal from a judgment of the superior court for Snohomish county, *Black, J.*, entered June 19, 1911, upon granting a nonsuit, in an action on contract. Reversed.

[1]Reported in 126 Pac. 419.

*Vince H. Faben*, for appellant.

*G. D. Eveland* and *S. J. White*, for respondents.

Gose, J.—This is a suit to recover an alleged balance due upon a street improvement contract. At the close of the plaintiff's testimony, the case was withdrawn from the jury and a judgment of dismissal and for costs was entered. Plaintiff prosecutes the appeal.

The contract provides, that the improvement shall be made under the superintendence of the street committee of the city council and subject to its acceptance and approval; that the improvement shall not be deemed completed until the city council shall have filed with the city clerk a statement, signed by a majority of them, to the effect that it has been completed; that

"No bonds or warrants shall be issued in any event for any part of said thirty (30) per cent so reserved until said party of the second part shall have filed with the city clerk a certificate signed by the city engineer stating that said period of thirty days has elapsed and no uncompleted or defective work has been discovered for which the city makes claim; nor until the contractor shall have purchased the bonds issued to cover the cost of list of owners, engineering and advertising to the amount of the fixed estimate, and shall have paid the par value thereof, in coin, into said local improvement fund, district No. 14, in the city treasury. It is hereby expressly provided that any warrants which shall be issued to the contractor in the amount of eight hundred and no-100 dollars, in payment of the fixed estimate for list of owners, engineering and advertising expenses incident to this improvement shall be by him properly endorsed, made payable to, and delivered to the city clerk for the transfer by him to the proper funds to meet said expenses, and the contractor for this improvement shall have no claim to any portion of the warrants issued in payment of said fixed estimate, except to endorse and deliver them as herein provided."

The specifications, which were expressly made a part of the contract, provide that the concrete shall be mixed by hand labor, that the city engineer may make such alterations

of the original plans as he shall deem necessary, and that the improvement shall be made under his superintendence. The complaint alleges, that the appellant has fully performed the contract on his part; that after the completion of the work, the improvement was approved by the city engineer, and accepted as completed by the city council; that the city council has arbitrarily and capriciously failed and refused to file with the city clerk a statement signed by the majority of them declaring that the improvement has been completed; and that the city engineer has arbitrarily and capriciously refused to issue to the appellant his certificate stating that the period of thirty days has elapsed and that the city has no claim for uncompleted or defective work. It is further alleged that there are no liens or charges against either the appellant or respondent or the improvement. These matters are traversed by the reply.

The respondent is a city of the third class, and its government is vested in a mayor and city council composed of seven members. Rem. & Bal. Code, § 7672. The minute book of the city shows that, on December 7, 1910, at a regular meeting of the council, the improvement was "accepted on report of the city engineer of its final completion," and that the minute was read and approved at a regular meeting of the council on December 21. The parol testimony is that the city engineer was present at the meeting of December 7 and recommended the acceptance of the improvement; that later the incoming mayor appointed the city council "as a committee of the whole" to go with the appellant and the city engineer and inspect the work and report their findings; that they did inspect it in the presence of such parties and a Mr. Stebbins who had been inspector for the city while the work was in progress, and that each member of the council then signed a certificate stating that the improvement was accepted. Other witnesses said that the acceptance was signed by a majority of the council and a majority of the street committee. This acceptance was presented to the city coun-

cil at its next meeting, and was thereafter, upon motion, withdrawn and the committee was discharged. The demand of the appellant for the filing of a certificate signed by a majority of the council and for the issuance of a certificate by the city engineer was refused.

The respondent contends that there can be no recovery, (1) because of the failure of the appellant to pay the amount of the fixed charges into the local improvement fund for the redemption of the warrants, as provided in the contract; (2) because the evidence shows that the concrete was mixed by a machine instead of by hand labor; (3) because the improvement was not accepted by the street committee; and (4) because the evidence is not clear and convincing that the city engineer acted arbitrarily or capriciously or in bad faith.

The first two contentions will be considered together. It is well settled that, in the absence of fraud, an acceptance of a public improvement by the governing body or by the party authorized by the charter, ordinance, or contract to accept it, is conclusive upon both parties. 1 Abbott, Municipal Corporations, § 288; *Lake Erie & W. R. Co. v. Walters,* 13 Ind. App. 275, 41 N. E. 465; *Whitefield `v. Hipple,* 11 Ky. Law 386, 12 S. W. 150; *Atkinson v. Davenport,* 117 Iowa 687, 84 N. W. 689; *Central Bitulithic Paving Co. v. Mt. Clemens,* 143 Mich. 259, 106 N. W. 888; *City Street Imp. Co. v. Marysville,* 155 Cal. 419, 101 Pac. 308, 23 L. R. A. (N. S.) 317. The respondent had the right and power to waive a strict compliance with the terms of the contract. *Lake Erie & W. R. Co. v. Walters, supra; Weston v. Syracuse,* 158 N. Y. 274, 53 N. E. 12, 70 Am. St. 472, 43 L. R. A. 678; 28 Cyc. 1054k.

The respondent has cited *De Mattos v. Jordan,* 20 Wash. 315, 55 Pac. 118, and *Atwood v. Smith,* 64 Wash. 470, 117 Pac. 393. In the *De Mattos* case the single question involved was whether an oral approval of the work by the architect was sufficient. It was held that the contract contemplated that his written certificate should be obtained prior to the

commencement of the action.   In the *Atwood* case it was held
that the change made in the work by the engineer was so
radical that it was in excess of his powers.

The evidence shows that the cement was mixed in a ma-
chine designed for that purpose, and that it is a better and
more modern method than hand mixing.   The area of the
work was small, and the inspector employed by the city was
giving his entire attention to a supervision of the work.   The
method of mixing the cement was apparent to both the in-
spector and the engineer, and a reasonable attention to their
duties required them to reject the concrete before it became
a part of the solid body of the improvement if the method of
mixing was not satisfactory.   Their failure to do so was
clearly an acquiescence in the method pursued.

The third contention is equally wanting in merit.   The
"street committee of the city council," as it is called in the
contract, was appointed by the council for its own conven-
ience.   Obviously the body that created it could either dis-
regard it or act independently of it.

In respect to the last contention, it suffices to say that we
have uniformly held that it is the duty of an architect or an
engineer who has been selected by the parties to a contract
to determine when the contract has been completed, to exer-
cise his honest judgment on the matters submitted to him.
He cannot arbitrarily, or capriciously, or in bad faith, re-
fuse to certify to the truth, and thus prevent a party from
having the compensation which he has earned.   *Craig v.
Geddis,* 4 Wash. 390, 30 Pac. 396; *Schmidt v. North Yakima,*
12 Wash. 121, 40 Pac. 790; *School District No. 5 v. Sage,*
13 Wash. 352, 43 Pac. 341; *McKivor v. Savage,* 60 Wash.
135, 110 Pac. 811; *Skagit County v. Trowbridge,* 25 Wash.
140, 64 Pac. 901.

The evidence tends strongly to show that the engineer with-
held his certificate because the appellant refused to bear the
burden of the former's errors.

For the reasons stated, the court was in error in withdrawing the case from the jury. Reversed.

MOUNT, CHADWICK, PARKER, and CROW, JJ., concur.