[No. 21038. Department Two. May 14, 1928.]

STRONG & MacDONALD, INCORPORATED, *Appellant*, v. KING COUNTY *et al.*, *Respondents.*[1]

[1] HIGHWAYS (33)—CONSTRUCTION — CONTRACTS—EXTRA WORK—EVIDENCE. Findings that a bulkhead gave way through the negligence of a contractor on county road work, and that therefore the contractor was not entitled to pay for repairing it, are sustained where an overflow had softened the fill, which gave way when the contractor moved a heavy steam shovel over it while in that condition.

[2] SAME (33)—COUNTIES (47) — UNAUTHORIZED CONTRACTS — ACCEPTANCE OF BENEFITS. A contractor on county road work directed by the county engineer to do extra work, resulting from an overbreak due to faulty plans, is entitled to recover the reasonable value, although there was no express agreement to pay for the same, where it was necessary work, incumbent upon the county, which had the benefit of the contractor's labor.

[3] PLEADING (183)—VARIANCE—EXTENT—ACTIONS ON CONTRACT. A contractor on county road work, suing on an express contract, may recover the reasonable value of extra work for which there was no express contract, where the evidence shows the actual issues tried to have included the claim.

[4] EVIDENCE (47)—RELEVANCY—VALUE OF SERVICES. The reasonable value of extra work caused by an overbreak in county road work is not shown by an agreement between the contractor and the county engineer to allow a certain sum therefor.

Appeal from a judgment of the superior court for King county, Jones, J., entered October 15, 1927, upon

[1]Reported in 267 Pac. 436.

findings in favor of the defendants in an action on contract. Reversed.

*Grosscup, Morrow & Wallace,* for appellant.

*Ewing D. Colvin* and *Harry A. Rhodes,* for respondents.

FULLERTON, C. J.—On August 16, 1926, the appellant, Strong & MacDonald, Inc., entered into a contract with King county by the terms of which it undertook to furnish all the necessary labor and material, and construct, improve and complete for the county a part of a certain described county road. Plans and specifications for the road had theretofore been prepared by the county and the contract provided that the road was to be constructed in accordance therewith. The road, for a part of its course, ran along the side of a rather high bluff which extended down to the waters of an arm of Puget Sound. The work required the construction of a bulkhead on the water side of the road and an excavation into the bluff on the other. The plans and specifications provided somewhat minutely the manner of construction. Roughly stated, the bulkhead was to be constructed by driving piles into the ground and spiking dimension planks thereto so as to form a wall. On the bluff side of the road, the embankment was to be graded back so as to have a slope of one and one-half to one.

The contract was let after competitive bidding. By the terms of the proposals, the bidders were required to make a lump sum bid for the entire work, and also a unit price bid, to "be used as a basis of agreement for extra work done under this contract or deductions made therefrom." The appellant's lump sum bid was $25,250, and its unit bid for common excavation was forty-five cents per cubic yard, and it was for these prices that the contract was let to it.

The appellant substantially performed the contract. In the course of the work, however, it was found that the material on the land side of the road would not stand in place when graded to the slopes prescribed by the plans and specifications. There were overbreaks, and a large quantity of such material slid into the excavated way. Under an agreement between the engineer and the contractor, the contractor removed some 8,500 cubic yards of such material. While it was understood between the immediate parties that the work of removing the material was not a part of the work the appellant was required to perform under its contract, and that it should be paid for the work, there was possibly a misunderstanding between them as to the manner of ascertaining the price to be so paid.

During the progress of the work, also, a part of the bulkhead gave way, and this was repaired by the contractor under the direction of the county engineer, at a cost to it of $579.01.

On February 27, 1927, the county engineer gave to the contractor a certificate to the effect that the contract had been substantially completed. At that time, additional material had slid into the way, which it was thought best to let remain until the slopes became more settled, and which prevented the contractor from performing certain minor details of the work. At this time, the contractor and the engineer reached an agreement as a basis for a settlement between the contractor and the county. It was agreed that the contractor should be paid for removing the overflow material at the rate of thirty cents per cubic yard, that it should be paid for repairing the bulkhead as upon a force account, and that there should be deducted therefrom the cost of completing the work which the contractor had left unfinished. Adjusting the account on this basis, there was found due the contractor for the extra work

the sum of $3,506.91. There was then unpaid on the contract the sum of $4,646, which, added to the sum reached on the settlement, aggregated $8,152.91. The engineer recommended to the board of county commissioners that the contractor be paid the aggregate sum, but that body refused to make any further payments upon the contract. The present action was the result.

In its complaint, the contractor demanded the sum of $9,377.91. The difference between the sum demanded and the sum the engineer recommended to be paid arose from the fact that the appellant claimed that the material removed from the way was common excavating, and was to be paid for at the rate of forty-five cents per cubic yard, whereas the engineer, as we have before noted, allowed but thirty cents per cubic yard for the work. The cause was tried in the lower court without the intervention of a jury. It refused to allow a recovery for the removal of the material which slid into the way because of the overbreak, and refused to allow a recovery for repairing the bulkhead. It did allow a recovery, however, for the unpaid part of the contract price, and a recovery for certain minor items for which the county conceded its liability, the total recovery being for $4,909.40.

The single question presented by the appeal is whether the court erred in refusing to allow a recovery for the excluded items. On the question of the county's liability, the items do not stand on quite the same footing. By the provisions of the contract, the county engineer was more restricted in his powers than is common in such cases. For any additional work, or any change in the character of the work authorized by the contract, arising from unforeseen conditions or fault in the plans, however desirable or necessary it might be, the engineer alone was without power to authorize it. Such additional work or change had to re-

ceive the sanction and approval of the board of county commissioners before it was deemed authorized, or before the county could be charged with any extra cost that might be thereby entailed. It was on this principle, that is to say, because the board of county commissioners had not authorized or directed the work to be done, or had not approved it after it was done, that the trial court held there could be no recovery against the county for removing the material falling into the way because of the overbreak of the embankment. It held that no recovery could be had against the county for its removal, in the absence of an express contract with the county authorizing the removal, and that here there was no such express contract.

[1] The same principle was applied to the work necessary to repair the bulkhead. But the court found an additional reason for disallowing that item. While the evidence on the part of the appellant tended to show that some two hundred cubic yards of material fell into the way at this particular place and that the increased pressure caused the bulkhead to break, the evidence on the part of the respondent tended to show that the appellant had not properly taken care of the surplus water accumulating on the graded way, that the water had softened a fill made at that place, and that the appellant had moved a heavy steam shovel over it while it was in the softened condition, and that the extra weight of the shovel and its sliding towards the bulkhead caused the bulkhead to give way. From this evidence, the trial court found that the break was immediately caused by the carelessness and negligence of the appellant, and that there could be no recovery by the appellant for its repair, even though it was caused in part by the overflow material.

With regard to this latter item, we are not disposed to override the conclusion of the trial court. As we

understand the evidence, the bulkhead had sustained for a considerable time the weight of the increased pressure caused by the overflow, and gave way at the time the steam shovel was moved over it. It is a matter of common knowledge that the fill would become more stable as it dried out, and that the pressure on the bulkhead would decrease rather than increase as time passed. It was thus a reasonable inference that the break was caused by the negligent act of the appellant rather than from the cause it assigned. This being so, it was obligated to repair it at its own cost.

[2] Whether the county is liable for the removal of the overbreak, is a more troublesome question. The evidence does not show that the overbreak was due to the fault of the contractor. On the contrary, we think it very conclusively shows that it was due to the fault of the plans for the work. The material of which the embankment was composed, as we have before stated, would not stand in place when graded to the slope the contract required. To grade the bank to a slope at which it would stand required the removal of a large quantity of material in excess of that required by the terms of the contract, and, manifestly, no just reason can be urged which would require this to be done at the appellant's cost. But we agree with the trial court that the county made no express contract with the appellant for the performance of the work, and, if an express contract be necessary to bind the county, we further agree with it that no recovery can be had against the county. But we have not heretofore adhered strictly to the rule that nothing but an express contract can fix a liability upon a municipality for the performance of a public work. In a number of instances where such a contract has been entered into which proved invalid only because of want of legal formality in its execution, and the work performed

inured to the benefit of the municipality, we have held that the municipality was liable for the reasonable value of the work; this upon the principle that municipalities are bound by the same standard of right and wrong that the law imposes upon individuals, and that it is neither equitable nor just that a municipality should have the benefit of the property and labor of another without compensating that other therefor. The cases so announcing the rule will be found collected in the case of *Besoloff v. Whatcom County,* 133 Wash. 109, 233 Pac. 284, and need no further reference. It is our opinion that the appellant comes within the rule. It was not a volunteer in the performance of the work. It was directed to perform it by the engineer whom the county put in charge of the work, and performed it with the expectation of being paid for it. It was work which was incumbent upon the county to perform, and was necessary in order to make the road usable.

[3, 4] But the respondent contends that the appellant is suing upon an express contract, to which the principle of the cited cases is not applicable, and unless it is entitled to recover upon such a contract it is not entitled to recover at all. But the issues as tried are not very well reflected in the pleadings of either side, and the actual issues must be gathered from the evidence introduced at the trial. Viewing the issues in the light of the evidence, it is clear that the appellant sought to bring its case within the rule of the cited cases. There was, however, no evidence introduced as to the reasonable value of the work, unless the agreement between the appellant and the county engineer as to the sum that should be paid therefor is such evidence. The appellant contended in the trial court, and it contends here, that if the liability of the county is established, the measure of the appellant's recovery is fixed by its unit bid for common excavation, and that the question

of reasonable value is immaterial. But while we think it mistaken in its contention, we do not think that it should, for that reason, be denied its rightful measure of recovery. Nor do we think it would be fair to either party to accept the agreement as the measure of recovery.

On this branch of the case, therefore, the judgment is set aside, and the cause remanded with instructions, if the parties themselves cannot otherwise agree, to determine the reasonable value, and enter a judgment in favor of the appellant for such sum as it adjudges to be reasonable.

ASKREN, MAIN, and HOLCOMB, JJ., concur.