[No. 24708.   Department Two.   May 10, 1934.]

COYLE CONSTRUCTION COMPANY, *Appellant,* v. SKAGIT
COUNTY, *Respondent.*[1]

[1]Reported in 32 P. (2d) 106.

*Caldwell & Lycette,* for appellant.

*John W. Brisky, Thomas K. Chambers,* and *R. V. Welts,* for respondent.

BLAKE, J.—April 21, 1930, plaintiff entered into a contract with the defendant, Skagit county, for the construction of a highway. Prior thereto, the county had made a call for bids, wherein it was stipulated that contractors, before submitting bids, must examine the site of the proposed work and the proposed plans and specifications. Plaintiff, having complied with this requirement, submitted its bid. The proposed highway ran along the Skagit river in the Cascade mountains. The work contemplated two extensive cuts in the side of a mountain which at one place, for a considerable distance, was practically perpendicular. The plans also called for loose rock rip rap for a distance of 1,425 feet along the river side of the road.

The work was not what is known as a "balanced job," the plans calling for the removal of some 30,000 yards of dirt in excess of what could be used in making fills. The plans, as bid on by the plaintiff, called for approximately 149,000 yards of common excavation. This amount was computed on the basis of one-half to one slopes in the cuts.

The contract reserved the right in the county engineer to change the degree of slope during the progress of the work. This he did between stations 20 to 40, where the slope was changed to one-eighth to one. The quantity of common excavation was thereby reduced to approximately 142,000 yards, under the plans as modified.

Payment under the contract was to be made on a

unit basis—twenty-five cents per cubic yard for common excavation, with a one-half cent allowance for over-haul, and $2.80 per cubic yard for rip rap. The contract contained the following provision:

"In case slopes finished to the lines as staked or re-established by the engineer slide into the roadway before final acceptance of the work, such slide material shall be removed by the contractor at the contract unit price per cubic yard and the slopes refinished, if so ordered by the engineer."

Before the work was accepted, great quantities of slide material fell into the roadway, which plaintiff was required to remove.

The contract provided that payment should be made upon the county engineer's estimates as to quantities, and that such estimates should be final.

The engineer estimated common excavation (including slide material) at approximately 200,000 cubic yards. He estimated the rip rap at 14,649 cubic yards. The county paid the plaintiff on the basis of those estimates at the unit rates provided for in the contract. In other words, plaintiff has been paid for approximately 200,000 yards of common excavation at the rate of twenty-five cents per yard, and for 14,649 yards of rip rap at the rate of $2.80 per yard.

Dissatisfied with settlement upon such basis, plaintiff brought this action to recover an additional sum of $57,050. The theory of the action is as follows: (1) The county engineer's estimates of quantities, both for excavation and rip rap, were made capriciously, arbitrarily, and upon a fundamentally wrong basis; (2) that the slides were due to faulty plans, and that, consequently, plaintiff is entitled to the reasonable cost of removing slide material, regardless of the above quoted provision of the contract; (3) that radical changes were made in the plans after the contract was

entered into, rendering the work more difficult and expensive; (4) that the county did not provide a place to waste the slide material, and that, consequently, plaintiff was delayed in removing the slides until the rains, coming on, rendered the work of removal more expensive and difficult; (5) that the county engineer directly prevented the removal of the slides during dry weather; (6) that, during the process of removing the slide material, the county engineer and the county commissioners agreed to pay plaintiff the reasonable cost of its removal; (7) that, during the progress of the work, the board of county commissioners passed certain resolutions, by which they interpreted the contract to mean that removal of slide material constituted "extra work" to be done under "force account."

The trial court made findings of fact contrary to all of plaintiff's contentions, and entered judgment for defendant. Plaintiff appeals. We shall discuss appellant's contentions in the order above outlined.

■ The provision in the contract making the engineer's estimates final is effective, unless the estimates are made on a fundamentally wrong basis, or the engineer acts capriciously or arbitrarily in making them. *Schmidt v. North Yakima,* 12 Wash. 121, 40 Pac. 790; *Mallory v. Olympia,* 75 Wash. 245, 134 Pac. 914.

No question is made as to the estimate for common excavation of 142,000 yards, called for by the plans after the slope between stations 20 to 40 had been changed to one-eighth to one. The engineer estimated the slide material at 58,000 yards additional. Appellant contends that the additional common excavation on account of slide material was 76,000 yards. The engineer's estimate was arrived at by cross-sectioning on the ground. The testimony shows that to be the generally accepted and most accurate method of determining quantities. No error is shown in the engi-

neer's method of cross-sectioning, nor in his computations. The preponderance of the evidence clearly sustains the finding of the trial court to the effect that the engineer's estimate for common excavation was correct.

Appellant contends that the engineer's estimate of 14,649 cubic yards of rip rap was arbitrarily made. This contention is grounded largely on the statement made by the engineer that he computed the rip rap by taking the length of the rip rap (1,425 feet), the height of the slope (37.25 feet), and the depth of the slab (3 feet), as called for in the plans—disregarding the actual amount of rock in the rip rap. It is true the amount arrived at by this computation was the amount paid for by the county. But it appears that this was but one of three methods used by the engineer in making the estimate.

He cross-sectioned the quarry from which the rock going into the rip rap was taken. His computation showed that 12,468 yards came out of the quarry. The specifications required that fifty per cent of the rock going into the rip rap should be not less than one cubic yard; thirty per cent not less than one-half cubic yard; not more than twenty per cent should range in volume from one-half cubic yard to one cubic foot. It is obvious that, in computing the rock in the rip rap by this method, two unknown factors must be taken into account—swell and waste. The former, estimated by various witnesses at from thirty to fifty per cent, is the increase in volume of solid rock when broken up. The latter, estimated at fifteen per cent to twenty per cent, is the loss in volume by reason of the rock breaking up, to that extent, in pieces smaller than required by the specifications. Offsetting these factors and adding the result to the 12,468 cubic yards actually taken from

the quarry, the result checks closely with the quantity of rip rap allowed in the engineer's estimate.

But the engineer made another check. The inspector on the job estimated the quantity of rock on the cars as they were dumped onto the embankment. These estimates were incorporated into daily reports, signed by the inspector and appellant's foreman on the job. By this method, it was computed that there were 14,-149 cubic yards of rip rap. It is apparent, we think, that the engineer's estimate was not arbitrary or capricious. Under the rule of the cited cases, the court is not warranted in disturbing it.

Appellant predicates its contention that the plans were faulty largely upon the case of *Strong & MacDonald v. King County,* 147 Wash. 678, 267 Pac. 436; its theory being that the degree of slope should have been sufficient to obviate slides. We find nothing in that case to sustain the contention. There, the contract did not provide for removal of slide material or payment for its removal. The court held that, notwithstanding the removal of slide material was not provided for by contract, the county must pay the reasonable cost of removing it. This was upon the theory that removal of the slide was necessary to the use of the highway; that the county, having received the benefit of the contractor's work, could not, in good conscience, refuse to pay what it was reasonably worth. Here, the contract expressly provided for the contingency of slides. To hold that the plans were defective, would be to read that provision out of the contract. Furthermore, to sustain appellant's contention with respect to the degree of slope would make the building of highways in mountainous regions prohibitive.

The contract reserved the right to change the degree of the slopes. The only change made in the

plans was changing the slope between stations 20 and 40 from one-half to one to one-eighth to one. This reduced the amount of material under the plans. Further than that, this change in the plans tended to lessen the probability of slides, since it brought the slope to the natural contour of the hillside. There was no fundamental change in the plans, as in the case of *Tribble v. Yakima Valley Transportation Co.*, 100 Wash. 589, 171 Pac. 544. What was said in *Kieburtz v. Seattle*, 84 Wash. 196, 146 Pac. 400, is pertinent here:

"But in a work where the contract price is based on a unit system, we cannot think a right of recovery can be grounded upon a loss caused by reason of the performance of work required by the contract merely because a change in the plans of the work increased the number of units of work of one class and decreased the number in another; especially where, as in the present case, the city is empowered by the contract to make 'variations in the quantity of the work to be done'."

Appellant's contention that it was delayed in the removal of slide material because the county did not provide a place to dump it, cannot be sustained. No provision in the contract has been pointed out imposing such obligation on the county. The only case coming to our attention which bears upon the question is that of *McBride v. Callahan*, 173 Wash. 609, 24 P. (2d) 105. In that case, a contract for clearing a right of way was construed. The contract provided that logs of more than certain specified dimensions could be deposited on private property adjacent to the right of way. (This arrangement was made with the consent of the owner of the abutting property.) The contract then provided that "all other organic matter should be cleared from the right of way," but did not provide where or how. To the contention that, for the

failure to make such provision, the contract was impossible of performance, the court said:

"The methods of disposition of 'all other organic matter' cleared from the right of way were mere details of performance. That provision of the subcontract did not go either to the essence or the subject matter of the contract. The fact that the contract was unprofitable because the subcontractors did not foresee the cost of removal of the organic matter affords no basis for the defense of impossibility of performance."

Furthermore, it is apparent from the testimony of the managing officer of the appellant that he understood that the problem of wasting excess material was appellant's. Referring to his examination of the site of the work prior to bidding, he said:

"Any contractor will, when he goes over the job, that is the first thing he does, sizes up the ground and conditions and sees how he will take care of the material on the job."

■ Appellant's contention that the engineer directly prevented the removal of slide material in dry weather is predicated upon directions given to appellant's superintendent not to waste any more material. The direction was given while sluicing operations were in progress between stations 20 and 40. The directions clearly referred to material in place between those stations, which the engineer thought might be necessary to complete a fill on the river side of the highway between those stations. At that time, no slides had occurred between those stations. A slide, however, consisting of some 21,000 yards, had occurred between stations 50 and 55. In our opinion, there is no foundation in the evidence to justify the interpretation of the engineer's directions not to waste material as an order not to remove the slide.

■ The contention that, during the progress of

the work, the contract was modified by the assurance of the county engineer and by individual county commissioners that they would see the appellant was paid the reasonable cost of removing slide material, is untenable. The engineer had no authority to so modify the contract, nor did the commissioners as individuals. *Strong & MacDonald v. King County, supra.* The board of county commissioners, as such, gave no assurance of any different or additional pay for removing slide material than as provided in the contract.

But appellant contends that, by two certain resolutions, the board did interpret the contract to mean that the removal of slide material was extra work to be done under force account. We do not so read the resolutions. Each resolution sets out numerous items not included in the contract as originally drawn, designates them as extra work, and fixes the price to be paid for each. Other items are described in the resolutions as extra work, but no cost price is fixed therefor. These items, for which no price is fixed, and of which "extra excavation" is one, are all for work and material for which unit prices were fixed in the contract. It is quite obvious that the resolutions were drawn on the assumption that the so-called extra excavation was to be done at the unit price of twenty-five cents per yard. There is nothing in either of the resolutions that tends in any degree to change or modify the contract or relieve appellant of its obligation to remove slide material from the right of way at twenty-five cents per cubic yard.

Judgment affirmed.

BEALS, C. J., TOLMAN, GERAGHTY, and STEINERT, JJ., concur.