WILLIANNA P. MILLER ET AL. *vs.* SAMUEL E. D. STUART ET AL.

*Reformation of Deed—Proof of Common Mistake—Grant of Right to Use Wall of Building.*

A written instrument will not be reformed in equity, on the ground that by reason of a mistake it fails to express the real agreement of the two parties, unless it be shown that the mistake was common to both parties. The fact that one of the parties was mistaken as to the meaning or effect of the instrument is not ground for reformation.

The bill in this case alleged that a deed, by which the right to use the wall of a building was granted to an adjoining landowner, failed to express accurately the real agreement which was that the grantee should also have the right to build on the wall, and the bill prayed for a reformation of the deed. The evidence examined and held not to support the allegations of the bill.

The owner of a building granted to the owner of an adjoining lot of ground the right to use the wall on that side "for the purpose of inserting in said wall the ends of beams or girders," to a designated height and depth, said girders to rest on pillars built on the land of the grantee, and to use said wall as one of the enclosures of the building to be erected by the grantee. *Held,* that this deed does not authorize the grantee to build upon the wall and make it higher so as to serve as one of the enclosures of a building erected by him larger than that of the grantor.

*Decided December 6th, 1907.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and BURKE, JJ.

*Randolph Barton* and *Randolph Barton, Jr.*, for the appellants.

*Frank Gosnell* and *Carroll T. Bond*, for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal is from a decree of Circuit Court No. 2, of Baltimore City, enjoining the appellants from the further prosecution of an action of trespass which they had instituted against the appellees for injuring one of the walls of a building.

It appears from the record that in the year 1904 the appellants owned the lot of ground lying at the northeast corner of Baltimore and Holliday streets in Baltimore City and the appellees owned the adjoining lot on the east. On October 26th, 1904, the appellants being about to erect a building on their lot made inquiry of the appellees if they desired to buy the right of using the easternmost wall of the proposed building which was to stand entirely upon the appellant's lot. This inquiry set in motion a series of negotiations between the parties which resulted in the execution by the appellants on November 25th, 1904, of the following instrument which, although called an agreement, appears upon inspection to be a grant to the appellees of the right to use the wall in question for certain specified uses. This grant which was signed, sealed and acknowledged by all of the parties thereto, both grantors and grantee and duly recorded among the land records of the city, reads as follows:

"This agreement, made this twenty-fifth day of November, 1904, by Willianna P. Miller, Almira P. Linthicum and Charles W. Linthicum, her husband, Ida B. Thomson and Clarence J. Thomson, her husband, and Catherine F. Miller, parties of the first part, and Samuel E. D. Stuart, party of the second part:

Witnesseth

That the said parties of the first part, in consideration of one thousand dollars ($1,000.00) the receipt of which is hereby

acknowledged, do hereby grant unto the said Samuel E. D. Stuart, his heirs, executors, administrators and assigns, for all time hereafter, the use of the easternmost wall (which said wall is now in course of erection) of the house on the northeast corner of Baltimore and Holliday streets, in the city of Baltimore and State of Maryland, for the purpose of inserting in said wall the ends of beams or girders, for the depth approximately of four inches and for the length measured vertically, of twelve inches approximately; said beams or girders are to rest on pillars built upon the property immediately adjoining said wall on the east.

And the said parties of the first part do grant unto said Stuart the right to use said wall now in course of construction as aforesaid, when completed, as the westernmost enclosure of his said building. The said wall stands on a line thirty feet or thereabout, east from Holliday street, and two feet west of the beginning point of the whole lot described in a lease from William F. Frick and Warfield T. Browning to John T. Ford, dated the 13th of February, 1867, and recorded among the Land Records of Baltimore City in Liber A. M. No. 329, folio 64, &c.

As witness the hands and seals of the parties hereto.''

The appellants then completed their building, which was three stories high, and in so doing carried its easternmost wall about three feet above the roof for the purpose of a fire wall and covered it with an appropriate coping. The appellees followed with the construction of a four-story building on their lot. In erecting this building they inserted the girders of its several floors into the easternmost wall of the appellant's house, until they reached the top of that wall when, they, without any notice to the appellants, removed the coping from the top of the wall and built the wall about seven feet higher throughout its entire length and used this addition to the wall as part of their own house and connected it with the front and rear walls of their building in such manner as to give it the appearance from the street of being part of their building.

When the appellants discovered the use which had thus been made of their wall they demanded that the appellees should remove the wall which they had built on top of it and restore it to its former condition or as an alternative should

pay the appellants an annual rent for its use and agree to re-
move it whenever requested by them to do so. The appellees
refused to comply with this demand, claiming that they had
acquired from the appellants the right to build the wall as
many stories higher as they desired.

The appellants thereupon brought the suit in trespass,
against the appellees, the further prosecution of which was
enjoined by the decree appealed from.

After they had been thus sued at law the appellees filed
the bill in the present case which prays that,

1. Certain of the parties to the so-called agreement of No-
vember 25th, 1904, who executed in their own right may be
required to also execute it in their capacity of trustees for cer-
tain others of its signers, and the Hopkins Savings Bank
which holds a mortgage on the property may also unite in it,
and that the name of Emma R. Stuart, the wife of Samuel
E. D. Stuart, may be inserted in it as a grantee.

2. That the agreement itself may be so reformed as to
clearly express the alleged intention of the parties to give the
appellees the right to use the wall to the extent to which they
have in fact used it.

3. That the appellants may be enjoined from the further
prosecution of their action of trespass, and for general relief.

The bill alleges in substance the making of the agreement
of November 25th, 1904, and that before it was made the
appellees (plaintiffs) had from time to time fully explained to
the appellants (defendants) their purpose to erect a four-story
building on their lot and had exhibited to them the drawings
of the architect employed by them for the erection of such
four-story building, and further alleged that it was the inten-
tion of all parties to the agreement that the appellants should
thereby grant and the appellees should acquire the unincum-
bered right to the joint use of the wall so as to constitute the
same the easternmost wall of the appellants' building and the
westernmost wall of the appellees' building the plans of
which were fully known to the appellants who were well
aware that the appellees intended to purchase the right to use

the wall as the western enclosure of their four-story building. That the appellees paid the $1,000 consideration in the agreement mentioned and proceeded to erect their four-story building openly and in public view according to the plans which had been shown to the appellants and in so doing used the wall for the westernmost enclosure thereof, building the wall about one-story higher as was necessary in order to so use it, and that no objection thereto was made by the appellants until nearly two years afterwards. The bill further alleges that by the mistake of the parties and the attorney who drew the agreement of November 25th, 1904, it fails to correctly express the intention of the parties thereto in failing to grant to the appellees the absolute and unincumbered use of the wall to enclose their building as aforesaid, and also in omitting to unite in it as grantors the said trustees and mortgagee and to unite as a grantee Emma R. Stuart, the wife of Samuel E. D. Stuart.

The appellants all answered the bill. They by their answer flatly deny that they agreed or intended to give to the appellees the unincumbered right to the joint use of the wall as in the bill alleged or to give to them any other or different use thereof than the limited one which is specified in the agreement of November 25th, 1904, which they insist correctly sets forth the true purpose and intention of the parties thereto. They also deny that the appellees communicated to them their intention to erect a four-story building on their lot but on the contrary assert that they, the appellants, knew nothing about the details of said building and especially that they knew nothing respecting the proposed height of it or the number of stories it was to have; nor did they know until long after the completion of the building that Mrs. Emma R. Stuart was a part owner of the property. The defendants further deny the truth of the allegation of the bill that the additional wall had been built on top of their wall openly and without objection from them, in the sense in which it is made in the bill, and in that connection they aver that they had no knowledge whatever of the building of the additional

wall until a short time prior to the institution by them of their action of trespass. Without admitting their responsibility for what the bill alleges to be the defect of parties, the answer declares the willingness of the appellants to have that corrected so far as they are able to do so except as to the Savings Bank mortgagee, and it is recited in the decree of the Court below that the appellants had in open Court declared their willingness and ability to have both the bank and the other parties unite in the agreement.

The power confided to Courts of equity of cancelling or reforming written instruments is universally conceded to be an extraordinary one whose exercise must be guarded with zealous care and granted only in a clear case. If the ground upon which its exercise is invoked be a mistake, as in the present case, a mistake on one side will not be sufficient. It must be a mutual one. *Dulaney* v. *Rogers*, 50 Md. 524; *Stiles* v. *Willis*, 66 Md. 552; *Farmville* v. *Butler*, 55 Md. 233. Not only must a mutual mistake be shown but the precise agreement which the parties intended but failed to express must be proven beyond a reasonable doubt. *Second Natl. Bank* v. *Wrightson*, 63 Md. 81; *Bouldin* v. *Wood*, 96 Md. 336. And the evidence required for this purpose must be of the strongest character and the proof must be convincing. *Keedy* v. *Nally*, 63 Md. 311; *Hilton* v. *Tyrell*, 93 Md. 657.

Measured by these tests the evidence in the record before us fails in our opinion to make out a proper case for the reformation asked for by the bill. Briefly reviewing the evidence touching the transactions leading up to the agreement of November 25th, 1904, we find that the important part of it consists of a series of letters written by Mr. Randolph Barton, counsel for the appellants who conducted the negotiations on their behalf, supplemented by the testimony of Mr. Barton and Mr. Linthicum, one of the appellants, and Mr. S. E. D. Stuart, one of the appellees.

The letters from Mr. Barton to Mr. Stuart are as follows:

Baltimore, October 26, 1904.

"We are about to commence building on the property on

the corner of Baltimore and Holliday streets.   If you desire
to buy the right of using our easternmost wall, which is to be
erected entirely on our property, we will be glad to negotiate
with you."

Baltimore, October 28, 1904.

"The owners of the building about to be erected on the
northeast corner of Baltimore and Holliday streets will grant
the right to use their wall for the purposes of your building
for $2,500."

Baltimore, Oct. 29, 1904.

"I am authorized to say, that if you will pay $1,500 for the
use of the wall of the three-story building now about being
commenced on the northeast corner of Holliday and Balti-
more streets, the transaction can be considered as closed.
Messrs. Beatty & Waters, the contractors for the building,
stated to me this morning that the wall
will cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$3,180
Say the value of the ground is. . . . . . . . . . . . . . . . . . . . . .  1,000

$4,180

You get the benefit of at least one-half of this, to say nothing
of the fact that you add at least one foot space to your lot
and are exempt from taxes for the wall which you enjoy."

November 23, 1904.

"I am authorized to accept $1,000 in settlement of the east-
ern wall question.   I send you herewith the agreement.   I
advise you to submit it to your own counsel, as I cannot act
for you in the matter, and I merely have written it out as the
quickest way of bringing the matter to a conclusion.  Be kind
enough to let me know if the agreement is satisfactory to you,
and I will send it to my people for execution.   I wish to dis-
burse the check this morning."

A number of interviews between Mr. Barton and Mr. Stuart
occurred during the period covered by these letters.   Mr.
Stuart testified that at these interviews they "invariably and
on every occasion treated upon the matter of an unrestricted
use of the wall" and that they "never treated the matter as to
a restricted right to use the wall," and further that on the day
he tendered his $1,000 check to Mr. Barton he took his builder
with him and the plans for his four-story building and sub-
mitted them to Mr. Barton in the presence of the builder, and

explained to him how he proposed to erect a building without the use of the appellant's wall in case they did not accept the check.

Mr. Barton on the contrary testified that when he asked $2,500 for the use of the wall the ordinary use of it as a party wall was contemplated, and that he still had in mind the same use of it when he in his letter of October 29th, 1904, offered to take $1,500 for it but both of those offers were refused by Mr. Stuart who "constantly urged as a reason why we should not charge him with so much was because all he wanted was the right to insert these girders in that wall and that consequently that wall would be his western enclosure; he incessantly stated that, and when I wrote to my client about it then it was that first conversation took place between him and Mr. Linthicum." Mr. Barton further testified: "Mr. Stuart was constantly minimizing the use he was going to make of that wall, and constantly saying that all he wanted to do was to go into it, these insertions that is all;" and that not a word was ever mentioned between him and Mr. Stuart about building on top of the wall. Mr. Barton denied that Mr. Stuart ever showed his plans for a four-story building on his lot or said anything to him about the height of the building and he, Mr. Barton, further testified that he had no knowledge prior to the execution of the agreement of November 25th, 1904, that Mr. Stuart intended to erect a four-story building on his lot. He also testified positively that he had never on behalf of his clients made any other agreement with Mr. Stuart than the one set out in the paper of November 25th, 1904.

Mr. Charles W. Linthicum, one of the appellants, testified that Mr. Stuart called him up over the 'phone and, after speaking of the negotiations with Mr. Barton about the wall, said, "You folks want so much money for that wall and I don't want the wall I simply want an insertion in the wall to put my joists in, and I will give $1,000 for it and not another cent," and that what Mr. Stuart thus said induced him to agree to take less for the wall. Mr. Linthicum further said that he reported Mr. Stuart's statement to him to Mr. Barton.

It is to be observed that although Mr. Barton denied the truth of Mr. Stuart's statement that he had shown him the plans for a four-story house in the presence of the builder, Mr. Stuart failed to produce the builder to corroborate his statement nor did he account for the absence of the builder. So far from the evidence measuring up to the requirements of a case for the reformation of the contract, its preponderance is against the appellees upon whom the burden of proof rests.

The learned Judge below in the decree appealed from held that under the agreement of November 25th, 1904, in its present form the appellees were and are entitled to build upon and use the easternmost wall of the building on the appellant's lot as now built upon and used by them. For this reason and to relieve the parties interested from the necessity for future litigation we express our opinion upon the true construction to be given to that instrument.

We are unable to agree with the construction placed upon the agreement by the decree. In our opinion the agreement when properly construed either by its contents alone or also in the light of the negotiations leading up to it did not authorize the appellees to build upon or enlarge the easternmost wall of the appellant's building. It contains no express provision granting the right to build upon the wall nor does it, in describing the rights granted by it, use any general words of description, such as "party wall" or "joint wall" or "wall in common" from which a purpose to give the grantees the unrestrained use of the wall or the right to build upon it could be fairly inferred.

On the contrary the agreement in plain language grants but two specified and limited privileges of using the wall. The first privilege is to insert girders into it of the size and to the distance mentioned, to be supported on pillars built on the appellee's own lot, and the second is to use the designated wall, when completed, as the westernmost enclosure of a building to be erected on the lot adjoining it on the east. The right to insert the girders is fully defined in the agreement itself and the right to use the wall as the western enclosure of the build-

ing to be erected to the east of it, would in our opinion be gratified and exhausted by erecting the proposed building against the east side of the wall and joining the building to the wall in an ordinarily good mechanical manner and maintaining it in that position. The right to extend the wall by building on top of it is no more to be implied from such a limited grant than the right to lengthen the wall by building an addition to the end of it on the land of its owner. The mere grant of a right to use a specified wall as an enclosure of a house to be built on one side of it should in our opinion be interpreted to intend a house of such size as the wall would in fact enclose and not to imply the right to enlarge the wall on the grantor's premises so as to enable it to enclose a larger house.

It follows from what we have said that so much of the decree appealed from as directs the agreement of November 25th, 1904, to be reformed by adding thereto the parties in the decree mentioned must be affirmed and all of the rest of the decree must be reversed, and, as it does not appear from the record that any demand was made upon the appellants, for a correction of the agreement in reference to the parties thereto, prior to the filing of the bill and the decree below recited that the appellants consented to such correction, the appellees will be required to pay the costs of the case above and below.

> *Decree affirmed in part and reversed in part, the appellees to pay the costs in both Courts.*