[No. 9553.   Department One.   August 10, 1911.]

Oscar P. Atwood et al., *Respondents*, v. Grant Smith et al., *Appellants.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—CONTRACTS—CHANGE—AUTHORITY OF CITY ENGINEER—RIGHTS OF PARTIES. Under a clause in a contract authorizing a city engineer to make such changes in the plans for a public improvement as the successful prosecution of the work may require, he is not authorized to radically change the slope of the excavations not necessary to correct any structural defects, but made merely to change the cost of the assessment, the property owners having specified in their petition for the improvement a specified slope, which the ordinance adopted, and damages to property owners having been awarded on that basis as well as private contracts for reducing lots to street level entered into; hence such contracts must be performed on the original basis, and contractors left to a remedy by reassessments.

SAME—CHANGE IN PLANS—DEFICIENCY IN FUNDS—APPORTIONMENT—BENEFITS. A deficiency in the sums collected on a public improvement cannot be made up by a radical change in the plans, throwing a larger per cent of the cost of excavations upon owners excavating their own lots to street level by private contract, but only by apportionment upon all the property according to benefits.

SAME—CHANGE IN PLANS—RIGHT TO OBJECT—ESTOPPEL. A party is not estopped to question an invalid change in the plans for a public improvement, when notified thereof by the contractor, where he did not mislead the contractor into the belief that he would assent, and shortly after notified him that the matter would be investigated before assent would be given.

SAME—CONTRACT—DETERMINATION OF DISPUTES. A clause in a contract between a city contractor and owners, to the effect that all disputes shall be decided by the city engineer, has reference only to disputes arising under the contract, and not to matters clearly not covered by the contract.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 13, 1910, in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

[1]Reported in 117 Pac. 393.

*Todd, Wilson & Thorgrimson,* for appellants.

*James Kiefer,* for respondents.

FULLERTON, J.—On May 12, 1906, certain persons, among whom was the respondent Oscar P. Atwood, owning platted property on what is known as Denny Hill in the city of Seattle, petitioned the city council of that city to cause the streets and alleys therein to be improved by widening certain of the streets and grading all of them to stated elevations above a named datum line. The petition was minute in its details, and specified the angles of the slopes for both fills and cuts, requiring the latter to be constructed with a side slope of 1 to 1, that is, a slope of 1 foot laterally for each 1 foot of vertical cut. It also contained a proviso to the effect that the city on letting the contract for the work should insert therein a condition requiring the contractor to excavate the private property of the several owners to a level with the street in its front at a cost per cubic yard not to exceed the sum bid by the contractor for excavating the streets. Acting pursuant to the petition, the city passed an ordinance widening certain of the streets and establishing grades of the streets and alleys in the district described, following the recommendations of the petition in detail, and requiring in terms that the cuts should have a slope of 1 to 1. It also instructed the corporation counsel to begin condemnation proceedings against the owners of the property affected by the improvement "so that just compensation might be made for the property and property rights taken or damaged by reason of . . . the grading and regrading of the" streets and alleys in conformity with the requirements of the ordinance. Condemnation proceedings were thereupon begun by the corporation counsel, and damages ascertained and awards made on the basis that the improvement would be made as prescribed in the ordinance.

Thereafter, on December 3, 1906, an ordinance was passed directing that a contract be let for making the improvement.

This ordinance did not set forth the details of the work, but provided that it should be made according to the plans and specifications prepared under the direction of the city engineer on file in the office of the department of public works of the city of Seattle. These plans and specifications described the work in detail, and in them it was provided that the side of the cuts should be made with a 1 to 1 slope. The contract was let pursuant to the ordinance on August 17, 1907, to the Rainier Development Company, at a price of 27 cents per cubic yard for all earth excavated. It was also expressly provided in the contract that the contractor should excavate such of the abutting property as the owners thereof should require to a level with the street fronting upon such property at the same rate per cubic yard that was charged for excavating the street. The contract did not set forth the detailed plans of the work, but provided that it should be done in "all respects in accordance with the plans now on file in the office of the city engineer of said city, and the specifications and general stipulations hereto attached." · The plans mentioned seem to have been duplicates of the plans on file with the department of public works, referred to in the ordinance directing the contract to be let. The general stipulations attached to the contract contained the following provisions:

"All materials and labor shall be furnished and placed in accordance with the following detailed specifications and the accompanying general and detailed plans of this improvement, which are hereby made part of these specifications. Said plans and specifications are subject to such changes, additions or instructions as the city engineer may require to furnish or deliver before the beginning or during the progress of the work. The side slopes shall be made as shown on the plans or as directed by the city engineer. To prevent all disputes and litigation it is further agreed by the contractor that the city engineer shall in all cases determine the amount of work to be paid for under the contract for this improvement, and his estimates and decisions

shall be final and conclusive, subject to the approval of the board of public works."

On September 28, 1907, an assessment roll was prepared and filed with the city comptroller. In this roll all the property of the district was assessed as benefited by the improvement, irrespective of the fact whether or not the owner thereof had been awarded damages in the condemnation case, and on its face provided for a sufficient sum of money to pay the cost of the excavation required by the contract, calculating the amount thereof on a basis of a 1 to 1 slope for the sides of the cuts.

The Rainier Development Company thereafter assigned their interests in the contract to the appellants, Grant Smith & Company and Stillwell, who on November 9, 1908, entered into a contract with the respondents Atwood, agreeing to excavate certain described property belonging to them as owners to a level with the street on which it fronted. The contract refers specially to the contract between the city and the appellants' assignors, reciting that the owner desires to and does ratify and adopt the action of the city council in entering into such contract and further desires to obtain the benefits thereof, and then provides that the contractor shall excavate the described property at a cost to the owner of 27 cents per cubic yard for all earth excavated and removed. No specific quantity of earth to be removed is mentioned in the contract, nor does it refer in any manner to the character of the slopes. An estimate was made of the quantity of earth to be removed by the engineer of the contractors, at the time the contract was signed and handed the owners. This estimate was calculated on the basis that the city would excavate the full width of the street and back upon the property of the owner the necessary distance to make a 1 to 1 slope for the side of the cut, the amount of the estimate being 19,613 cubic yards. The contract also contained the following provision:

"All measurements of earth shall be made by the chief

engineer of the contractors and his measurements shall be conclusive, except so far as the same may be controlled by the decision of the city engineer as hereinafter provided. In case of any controversy arising over the measurement of earth under this contract or over the construction of said contract the same shall be submitted to the city engineer of the city of Seattle and his decision therein shall be final."

After the execution of the last mentioned contract, and while the assessment roll was in the hands of the city council for final adjustment, this court rendered a decision holding, in substance, that property which the jury in the condemnation proceedings found would be damaged by the proposed improvement could not afterwards be assessed to pay the cost of the improvement. *Schuchard v. Seattle*, 51 Wash. 41, 97 Pac. 1106. The effect of the rule announced was to render uncollectible some $67,000 of the amount of the assessment then under adjustment by the city council, and the city authorities were obligated to find means by which to make up the deficiency. The city engineer found upon examination that by changing the slopes from 1 to 1 to ¾ to 1, that is, ¾ of a foot back onto the abutting property to 1 foot of vertical excavation, the decreased cost of the improvement would equal the deficiency, and conceiving that he had authority, in virtue of the provisions of the contract making the "plans and specifications subject to such changes, additions or instructions as the city engineer may require," to make such a change, ordered this change in the plans and specifications of the work. The change was thereupon reported to the city, and on March 31, 1909, was formally ratified by the finance committee of the city council, and the contractor instructed in writing to conduct the excavation according to the change so made.

On May 20, 1909, the contractor wrote the owner a letter, the body of which was as follows:

"Referring to your contract with us dated Nov. 9th, 1908, providing for the excavation of your two lots at the corner of Third avenue and Lenora street, lots 1 and 2, in block C.

For your information will state that some of your work has been done; we cannot state at this time when your contract will be completed but when it is, regular bill will be sent you. The total yardage involved is 26,424 cu. yds."

The owners gave the letter no attention until some time after its receipt, when Oscar P. Atwood went to the office of the contractor to inquire about it. He was then informed of the cause of the increased estimate of the yardage to be charged to him, and left, saying, in effect, that he would investigate the matter before paying for the increased quantity. The work of excavating the property was completed about February 10, 1910, at which date the contractors sent the owners a bill for $7,121, claiming the amount to be due for excavating 26,424 cubic yards of earth, the quantity being computed on the basis of a 3/4 to 1 slope. The owners tendered $5,295.80 for the excavation of 19,613 cubic yards of earth, the quantity removed from their property, estimating the street to be cut at a 1 to 1 slope. This sum was not accepted by the contractors. This action was thereupon begun by the owners to determine the amount of their liability. On the trial the court ruled in their favor, and entered judgment accordingly. This appeal was taken therefrom.

The question principally discussed by the appellants is the power of the city engineer to make the change in the slope of the cuts attempted to be made by him and according to which the appellants prosecuted the work. It is argued that the power was conferred on the engineer by that clause of the contract which empowers him to make such changes and alterations in the plans and specifications as the successful prosecution of the work may require. But we think it manifest that this clause of the contract cannot authorize such a radical change in the contract as was here attempted. No doubt under this provision the engineer could lawfully make such changes and alterations as were necessary to correct structural defects in the plans of the work or to overcome

engineering difficulties arising from conditions not foreseen or known at the time the contract was entered into, or may-haps correct minor and inconsequential omissions and mistakes therein, but the principle cannot be extended to cover a case such as the one now in question. The change attempted to be made was radical instead of minor and inconsequential. The necessity for it did not arise from any defect in the plan of the work or from engineering difficulties not foreseen at the time the contract was entered into. The change was made for the sole purpose of eliminating a large part of the cost of the work, and this was clearly not within the powers of the engineer.

But it is said that the change was ratified by the city and was a matter solely between the contractor and the city, and since they are satisfied, no one else has a right to complain. But the premise here assumed is incorrect. On the contrary, the property owner has a vital interest in the character of work and in the contract for the work; his property is to be assessed to pay the cost of the work. It will be remembered from the facts recited that the work was instituted on the petition of the property owners, who specified the character of slope to the cuts they desired to have made; that the city adopted the plans suggested; and that the condemnation proceedings, which were brought to determine the amount of damages the several property owners would suffer by reason of the improvement, were based on the assumption that a side slope of 1 to 1 would be made in all of the cuts. It is plain that any material change in the slope must materially affect this question of damages. Some of the property holders obtaining damages might not have obtained any had their damages been estimated on the basis of a ¾ to 1 slope, while it is evident that those situated as the respondent is situated, who must excavate their lots to the street level to make them accessible, would be materially damaged by the change. This the city is forbidden to do by the state constitution unless the owner be compensated therefor. The city,

therefore, was likewise without power to make the contemplated change in the manner it was attempted to be made without the consent of the property owner.

Since neither the city engineer nor the city itself had the power to alter the contract in the manner attempted without the consent of the property owners, it must follow, we think, that the contractor cannot call upon the property owner to pay for the excavation of the quantity of earth sought to be eliminated from the city's contract by the attempted change. However valid the change may have been as between the city and the contractor it was invalid as to the owner, and his liabilities cannot in any manner be affected thereby. As the earth has been removed by the contractors they must bear the burden thereof, unless the city comes to their relief by causing a reassessment to be made upon the property benefited, or by payment from its general fund.

It is suggested that the owner's contract with the contractor obligated them to pay for the part eliminated by the city. But plainly this is not so. The latter contract was made before any alteration in the principal contract was attempted by the city engineer or the city, and at a time when all of the parties contemplated that the city would remove all of the earth on the owner's lot included within the stated slope. It was thus only the remainder that was intended by the parties to be included within the contract, and this remainder could not be increased nor diminished by acts of third persons not sanctioned by the owners.

The appellants further argue that inasmuch as the city had power to assess this deficiency against the owners of property benefited by the improvement, and could thus have compelled them to pay the cost as an additional assessment, the property owners ought not in equity and good conscience be heard to complain of the plan adopted, since it was only another mode of accomplishing the same result. But by a reassessment the deficiency would have been distributed among the property owners benefited ratably and in proportion to

the benefits the work as an entirety conferred upon their property. The method adopted, if carried out, would not assess the property ratably and in proportion to benefits. The respondents' property, by reason of the fact that the cut in its front exceeded one hundred feet in depth, would be charged with a large part of the deficiency, while neighboring lots but a short distance away, which had no cut at all in their front and which were equally benefited by the general improvement, would escape altogether. Such inequalities would not be tolerated in a general assessment, and, of course, no substitute for a general assessment can be tolerated which works such inequalities.

It is next contended that the respondents are estopped by their conduct from questioning the legality of the change made in the principal contract. This contention is founded upon the letter above quoted and the acts of the respondent Oscar P. Atwood with reference thereto. It is thought that Atwood owed the contractors the duty of notifying them that they would not recognize the validity of the attempted modification before the work was completed, but the respondents owed the contractors no such duty. It was enough that they did not mislead the contractor by their conduct into the belief that they assented to the modification. Here there was no such conduct. The letter, it will be observed, makes no direct mention of a change in the contract with the city, and called for no reply. And the record shows that the particular respondent who called to inquire concerning the increased estimate of yardage and was told of the modification, so far from assenting to modification, expressly stated that he would investigate the matter before paying for the increased yardage. This is an indication of nonassent to the modification rather than a direct assent thereto. The contractors certainly could not have been misled by the respondent's conduct, and they cannot claim relief on the ground of estoppel unless they were so actually misled.

A clause in the contract between the contractor and the

owners provided in effect that all disputes as to the amount of excavation to be paid for should be finally determined by the city engineer.  It is claimed that the city engineer had the right under this clause to determine whether or not the owner should pay for the increase of excavation caused by the change in the plans, and that he had decided, or would decide, that the respondents were liable.  But it seems clear to us that this was not a matter within the power of the engineer to determine.  The disputes as to the quantities, which he is empowered to decide, must arise under the contract.  The excavation in dispute was, as we have shown, clearly not covered by the owners' contract, and the engineer could, with the same propriety, have determined that these particular owners should pay for excavating all of the earth eliminated from the principal contract by the change made therein as he can determine that they shall pay for the part in front of their own lots.

The foregoing considerations require an affirmance of the judgment, and it will be so ordered.

DUNBAR, C. J., PARKER, MOUNT, and GOSE, JJ., concur.