[No. 14476. Department Two. April 26, 1918.]

JAMES T. KELLEY *et al., Respondents,* v. GRANT SMITH
*et al., Appellants.*[1]

REFORMATION OF INSTRUMENTS — MISTAKE—WANT OF MUTUALITY.
Mortgages given by property owners to secure payment of lump sums
agreed upon and due under the terms of regrade contracts, cannot
be reformed because of the owner's ignorance of his rights under
city ordinances providing for a less expensive regrade than the one
contracted for, in the absence of any allegation of fraud or mutual
mistake.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered July 5, 1917, in favor
of the plaintiffs, in an action for the reformation of
mortgages, tried to the court. Reversed.

*Preston & Thorgrimson,* for appellants.

*James Kiefer,* for respondents.

[1]Reported in 172 Pac. 542.

HOLCOMB, J.—This action is waged by respondents to adjust, settle, and determine the amount due upon two certain mortgages, alleged to have been executed in ignorance on the part of the mortgagors of the correct and legal amounts for which the mortgagors were liable at the time the mortgages were given. In effect, the action is for the purpose of reforming and altering the mortgages upon the grounds stated. The court granted the relief prayed.

Respondents are the owners of two parcels of lots on two block corners about three blocks apart in the Denny-Hill regrade district, in Seattle. In August, 1917, the city of Seattle entered into a contract with the Rainier Development Company for the grading down of the streets in this district, which also provided for the excavation of private lots at the same time as the streets were cut down, contracts for such work to be entered into on demand of the contractors. This contract was afterwards assigned by the Rainier Development Company to Grant Smith, W. E. Hauser, E. V. Hauser, and S. J. Stillwell, copartners doing business under the firm name of Grant Smith & Co. & Stillwell, who started work on the regrade in 1908. At the time of commencing work, the contractors mailed notices to the various property owners requesting them to enter into contracts for the excavation of their respective parcels of property, the proof showing that such notice was mailed to respondent James T. Kelley, who, at that time, lived in the Yukon Territory near Dawson. On March 12, 1909, a form of contract was sent Mr. Kelley for signing, which he refused to sign. Because of his failure to enter into these contracts, the contractors had to work around his respective pieces of property, leaving them standing some 100 feet above the street grades. In September, 1910, about a year after the contractors had finished excavation in the

neighborhood of respondents' part of the land, Kelley came to Seattle. Contracts were then entered into for the excavation of the property which, as shown by the copy attached to respondents' bill of particulars, provided, among other things, as follows:

"The said owners shall pay the contractors, as payment in full for the work herein provided for, the sum of $6,200."

The two contracts were the same, excepting that the other one was for the sum of $6,100 and covered the other parcel of lots. Work was immediately prosecuted under these contracts, and the excavation completed on one piece in December, 1910, and on the other in January, 1911. Statements of the amounts due were then sent Mr. Kelley, who had returned to Dawson, and mortgages for the respective sums of $6,100 and $6,200, in settlement of the amounts due, were executed by himself and wife under an option in the contracts providing therefor, the contracts containing a provision that, if the property owners did not desire to pay cash, they could, within thirty days, give mortgages payable in ten annual installments with seven per cent interest per annum.

To the complaint, as amplified by bill of particulars, a demurrer was interposed and overruled, and thereupon an answer was filed which, after making certain admissions and denials, pleaded three affirmative defenses: (1) A defect of parties, in that all the parties to the original contracts were not made parties to the case; (2) the statute of limitations, as to all payments made on the mortgages prior to December 1, 1913; and (3) estoppel.

Without noticing the first two affirmative defenses urged by appellants, we will pass to the right of respondents to recover at all. The theory of respondents is that they are entitled to the relief which certain

property owners obtained by virtue of the decision of this court in the case of *Atwood v. Smith*, 64 Wash. 470, 117 Pac. 393, holding that it was *ultra vires* for the city of Seattle to attempt to change the established slopes under the ordinances and contracts for the regrading of the streets and abutting property of which respondents' property is a part. The ordinance requiring the work to be done was upon a property owner's petition, and the petition and the ordinance ordering the work to be done contained the provision,

"That the city of Seattle, in entering into a contract for the performance of said improvement, shall insert therein a provision, for and on behalf of and to the use and benefit of any owner of private property within the district to be assessed for this improvement who may desire said property to be excavated, that said owner shall have the right and privilege to demand that the contractor for this improvement shall excavate said property at the same time as the abutting streets are excavated and at a cost per cubic yard not to exceed the price paid by said contractor for excavating the streets and avenues embraced in the contract, and said contractor shall be required to enter into a contract with said private owners for the performance of said excavation in accordance with the terms and conditions herein provided."

Subsequent to the making of the contract, the city endeavored to change the slopes of the public excavation from a 1 to 1 slope to a 1 to ¾ slope, the effect of such action being to increase the cost of the private excavation. It is alleged and shown by evidence that, at the time the change was attempted and at the time the litigation was begun in the *Atwood* case in May, 1910, and up to the time of signing the contracts and mortgages and thereafter, the respondents were residents of Yukon Territory and knew nothing of the change of slope or litigation; that, at the time the contracts were entered into, September, 1910, the case

of *Atwood v. Smith* had not been tried in the lower court, much less decided by this court, and that little or no publicity had been given to the attempted change of slope. It is, therefore, the contention of respondents that they contracted for the excavation of their lots at a price which is substantially that of the 1 to ¾ slope price; that it was the intention of the property owners who petitioned for this work, and of the municipal authorities, to place all property owners in the district whose property should require excavation to bring it down to a practicable and usable level upon the same basis. They further contend that the property owners' petition operated as a contract between the city and the property owners as to the manner and method of doing the work, and particularly as to the amount of the excavation under the contract; and the respondents, having contracted in ignorance of the attempted change in their rights, are entitled, before final payment of the mortgages securing the contract price, to maintain this action to assert their rights under the petition and ordinance and general city contract. They contend that it is settled and established law in this state that no one can be estopped of his rights unless he acts in knowledge of such rights; citing *Stahl v. Schwartz,* 67 Wash. 25, 120 Pac. 856, and *Bardsley v. Sternberg,* 17 Wash. 243, 49 Pac. 499. We are of the opinion that the situation brought about by the decision of *Atwood v. Smith, supra,* has no bearing whatever upon this case.

To grant the relief prayed by respondents means nothing else than to reform and modify not only the mortgages, but the previous contracts which had been fully executed and performed by appellants and merged in the mortgages. Respondents, acting through James T. Kelley, for himself and as attorney in fact for his wife, made the contracts on which these mort-

gages are based in Seattle, after having been there at least a day or two, contracting for lump sums to be paid for the excavation of all of the parcels of lots instead of unit prices for so much yardage as might be required to be removed. He had refused to contract in any way for the excavation of their property *at the same time as the abutting streets were excavated,* as provided by the ordinance and the original property owners' petition. At that time he would have had the right to have the contract provide for "a cost per cubic yard not to exceed the price bid by the contractor for excavating the streets and avenues embraced in the contract," and as decided in *Atwood v. Smith, supra,* on the plans and specifications adopted by the city requiring a 1 to 1 slope.

A very similar case is that of *Union Mach. & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183, where it was held that, where a mortgage, complete and unambiguous in its terms, was given by a failing debtor to secure four certain notes specifically described in the mortgage, the recital of the amount and character of the debt is invulnerable to parol attack, in the absence of fraud or mistake, and it is incompetent to show by parol that, as additional consideration for giving the mortgage, the mortgagee, by a contemporaneous parol agreement, undertook to pay the sum of $1,000 upon the indebtedness of the mortgagor to a third person, since it varies the written contract by adding new terms and creating new burdens. It was there said:

"We have been cited to no authority, and know of none, holding that, where a mortgage is given to secure a certain indebtedness specifically described therein, the character and components of which are known and admitted, it is competent, without any allegation of fraud or mistake, to prove that, by a contemporaneous parol agreement, it was intended to secure a debt of a

wholly different origin and character, or an additional sum to be advanced by the mortgagee as an additional consideration for the mortgage. Much less is it competent to prove that, by such an oral agreement, an additional sum was to be paid as an additional consideration without any intention that it should be secured by the mortgage. Such proof in either case would not be proving the consideration merely, but varying and enlarging the contract by adding new terms and conditions and creating new burdens.''

So in this case the object of respondents is to diminish the amounts stated to be the indebtedness of their mortgages, varying the contract, and without any allegation of fraud or mistake.

''It is a universal rule that the written contract itself must be resorted to as the source of authority for receiving parol evidence, and where, as here, the contract shows a deliberate agreement complete in itself and formally executed, parol evidence to enlarge its scope or deny its terms is never admissible.'' *Allen v. Farmers & Merchants Bank of Wenatchee*, 76 Wash. 51, 135 Pac. 621.

See, also, *Gordon v. Parke & Lacy Mach. Co.*, 10 Wash. 18, 38 Pac. 755; *Costello v. Bridges*, 81 Wash. 192, 142 Pac. 687, L. R. A. 1915A 853; *Farley v. Letterman*, 87 Wash. 641, 152 Pac. 515; *Tacoma Mill Co. v. Northern Pac. R. Co.*, 89 Wash. 187, 154 Pac. 173.

''Reformation of an instrument for mutual mistake will not be granted unless the evidence is clear and convincing that the writing was not what the parties intended and that the mistake was mutual.'' *Moore v. Parker*, 83 Wash. 399, 145 Pac. 440 (Syllabus).

See, also, *Anderson v. Freeman*, 88 Wash. 608, 153 Pac. 307; *Bruce v. Grays Harbor Drug Co.*, 68 Wash. 668, 123 Pac. 1075.

''If the ground upon which its exercise is invoked be a mistake, as in the present case, a mistake on one

side will not be sufficient.   It must be a mutual one.
. . . Not only must a mutual mistake be shown, but
the precise agreement which the parties intended, but
failed, to express, must be proven''

by evidence clear and convincing.   *Miller v. Stuart*, 107
Md. 23, 68 Atl. 273.

The pleadings do not allege any mutual mistake or
fraud, and none was proven.   Respondents have no
more right to recover in this form of action than they
would have to recover the payments which they made;
or, if they had paid the entire amount of the contracts
in cash instead of availing themselves of the option to
give mortgages for the amounts due thereunder, to re-
cover the cash paid for the performance of the con-
tract.

The decree must be reversed.

ELLIS, C. J., CHADWICK, MOUNT, and PARKER, JJ.,
concur.