[No. 26849. Department Two. December 31, 1937.]

ASHER BROS. GENERAL ILLUMINATING COMPANY, *Respondent*, v. GENERAL ILLUMINATING COMPANY, *Appellant*.[1]

*W. H. Abel*, for appellant.

*Douglas D. Mote* and *L. B. Donley*, for respondent.

BLAKE, J.—Plaintiff, as assignee of L. E. Asher and C. C. Asher, brought this action to recover compensation for services alleged to have been performed under an oral agreement, which was entered into "simultaneously" with a written agreement covering the same subject matter. The defendant interposed a demurrer to the complaint, which was overruled. Defendant then answered, denying the alleged oral agreement. Upon trial of the issues, defendant objected to the introduction of evidence of the alleged oral agreement, on the ground that it tended to vary and contradict the terms of the written contract. The court received the evidence of the oral agreement, and found that such

[1]Reported in 74 P. (2d) 495.

an agreement was actually made. Upon the findings, judgment was entered in favor of the plaintiff for $2,291.61, from which defendant appeals.

The sole question to be determined is whether parol evidence was admissible to prove an oral contract entered into "simultaneously" with a written contract entered into between the appellant, on the one hand, and L. E. Asher and C. C. Asher on the other.

The written contract, executed March 19, 1932, contains recitals and provisions which it is necessary to detail at some length in order to understand what the alleged oral contract is about. It appears that, prior to the date mentioned, appellant had been engaged, on a large scale, in installing, selling, leasing, and servicing electric signs. It had become indebted in large amounts to Commercial Credit Company, National Credit Company, and Grays Harbor National Bank. It was also indebted in considerable amounts on account of payroll and current bills. L. E. Asher, who was an officer of appellant, held its note for $3,750. There was other indebtedness, evidenced by notes, amounting to $2,664.63.

To secure the indebtedness to Commercial Credit Company, National Credit Company, and Grays Harbor National Bank, appellant had assigned leases and conditional contracts of sale. These concerns made collections on the contracts and leases, respectively, held by them, directly from the lessees and vendees. The leases and contracts contained provisions requiring appellant to service the signs. For considerations unnecessary to recite, the Asher Brothers agreed that the note to L. E. Asher be canceled, and that they would assume and pay the indebtedness on account of current bills, payroll, and the notes amounting to $2,664.63. They also agreed

" . . . *at their own cost and expense,* to fully and

punctually perform all the obligations of the Company *with respect to the servicing of all signs now leased by the Company or sold by the Company on conditional sales contracts,* all in accordance with the provisions of such leases and contracts in respect to servicing such signs, said leases and contracts being the leases and contracts scheduled in the exhibits hereto attached, and also agree to fully perform all other obligations of the Company with respect to such signs as set forth in such leases and contracts. The obligations of the Ashers as in this paragraph set forth shall continue throughout the entire life of such leases and/or contracts."

Further, with respect to compensation for the services to be rendered pursuant to the above provision, the contract provided:

"The Company and the Ashers have made arrangements satisfactory to the Ashers with said Commercial Credit Company, and said National Credit Company and said Grays Harbor National Bank, whereby from the collections made by them respectively on the leases and/or contracts assigned to and now held by them, they will pay the Ashers on or about the 15th day of each calendar month a sum equal to 15% of the respective cash collections made by them during the preceding calendar month, *and the Ashers hereby expressly agree to look to such payments as and for their compensation for their servicing of such signs.*"

Now, it is for servicing signs for which Commercial Credit Company held the leases and contracts that respondent seeks compensation under the alleged oral agreement "made simultaneously with the contract heretofore set out."

The substance of the oral agreement, as claimed by respondent, is that, notwithstanding the recital in the contract, it was understood by all parties that Commercial Credit Company would not pay for any servicing charges out of collections made by it during the period of ninety days immediately subsequent to the execu-

tion of the contract (March 19, 1932); that, to induce Asher Brothers to enter into the written contract, appellant orally agreed, for that period of ninety days, to pay for the servicing of signs, the leases and contracts for which were held by Commercial Credit Company.

That such an oral contract is contradictory of the express terms of the contract, would hardly seem open to argument. Respondent suggests that the written contract is ambiguous with respect to compensation for servicing the signs. We do not know how it could have been made plainer that Asher Brothers were to look solely to Commercial Credit Company, National Credit Company, and Grays Harbor National Bank for compensation for servicing the signs.

Respondent asserts that a contemporaneous oral agreement which is the inducing cause for entering into a written contract may be proven by parol evidence. Many cases are cited as supporting the statement. We have examined them all with much interest, particularly those from the supreme court of Pennsylvania, which do hold that a verbal promise, on the faith of which a written contract is executed, may be established without alleging fraud or mistake, even though it vary the terms of the writing. *Noel v. Kessler*, 252 Pa. 244, 97 Atl. 446; *Excelsior Saving Fund & Loan Ass'n v. Fox*, 253 Pa. 257, 98 Atl. 593.

But this court has long been committed to the rule that, where a written agreement purports to cover the entire subject matter with respect to which the parties are contracting, evidence of a contemporaneous or prior oral agreement, contradicting or altering the terms of the writing, is inadmissible, in the absence of fraud or mutual mistake. *Hubenthal v. Spokane & Inland R. Co.*, 43 Wash. 677, 86 Pac. 955; *Anderson v. Mitchell*, 51 Wash. 265, 98 Pac. 751; *Union Machinery & Supply Co. v. Darnell*, 89 Wash. 226, 154 Pac. 183; *Grubb v. House*,

109

93 Wash. 200, 160 Pac. 421; *Thompson & Stacy Co. v. Evans, Coleman & Evans,* 100 Wash. 277, 170 Pac. 578; *Kelley v. Smith,* 101 Wash. 475, 172 Pac. 542. In the case first cited, the court quoted with approval the rule as stated in 17 Cyc. 714:

"In order to let in evidence of a collateral agreement between the parties, such agreement must be consistent with the terms of the writing; and the evidence must not tend to vary or contradict the terms of the written instrument or to defeat its operation."

Clearly, the oral agreement upon which respondent seeks to recover falls under the ban of the rule, since there is no allegation or proof of fraud or mutual mistake.

Judgment reversed.

STEINERT, C. J., BEALS, MILLARD, and ROBINSON, JJ., concur.