[No. 35528.    Department Two.    August 31, 1961.]

FELIX L. KINNE *et al., Appellants,* v. B. L. LAMPSON *et al., Respondents.**

*Chaffee & Aiken,* by *Stephen E. Chaffee,* for appellants.

*Peterson & Taylor,* for respondents.

*Reported in 364 P. (2d) 510.

FINLEY, C. J.—This is an action to recover $1,000, paid by Felix L. Kinne (referred to herein as though he were the sole plaintiff-appellant) to B. L. Lampson (referred to herein as though he were the sole defendant-respondent) as the down payment on the purchase of a steam boiler. At the close of the evidence the trial judge filed a memorandum opinion, indicating that he intended to decide the controversy in favor of the plaintiff. The defendant, on the ground of settlement, then moved to dismiss the lawsuit. The motion was granted, and this appeal by the plaintiff followed.

In March, 1956, by an oral agreement, appellant, a mint farmer, was to purchase, and respondent was to sell an "Economic" brand steam boiler. The agreed purchase price was $3,250, payable: $1,000 down; $1,000 on September 1; and the balance of $1,250 to be paid a year later. The boiler was to be delivered to the appellant during the month of June after the receipt of the down payment. Appellant Kinne, on March 26, sent a check for the $1,000 down payment and a proposed conditional sale contract, embodying the terms agreed upon, to the respondent. On March 30, the respondent cashed the check. This partial payment under the oral contract makes the statute of frauds inapplicable. (RCW 63.04.050)

On April 4, respondent's counsel wrote to appellant's counsel and suggested that the respondent would prefer to handle the transaction by means of a note and chattel mortgage rather than the conditional sale contract. Appellant's counsel stated that this procedure was satisfactory, and instructed the respondent to forward the note and mortgage to the appellant, who would sign and return them. The note and mortgage, as forwarded, contained terms substantially different from those previously agreed upon by the parties and contained in appellant's proposed conditional sale contract. Variation or modification of the originally oral, but at this point partially performed, agreement might have been accomplished if appellant had ac-

cepted the terms and executed the note and chattel mortgage agreement. But this did not occur.

Nothing of further significance happened until July 3, 1957, when the appellant wrote to the respondent, reminded him of the terms of their initial agreement, and stated that he was still ready and willing to buy the boiler on the original terms, including interest accruing on the as yet unpaid installment due on September 1, 1956. The appellant also offered to cancel the contract if the respondent would return the $1,000 down payment.

On July 15, counsel for respondent wrote the appellant:

"Inasmuch as you failed and refused to comply with the terms of the agreement [*i.e.*, did not sign and return the note and chattel mortgage], Mr. Lampson had no other choice but to make other disposition of the boiler and retain your $1,000.00 as liquidated damages for your failure to go through with the sale."

This lawsuit was then commenced by appellant.

On September 9, 1958, during a recess in the trial, respondent's counsel suggested that a settlement might be possible. As the trial court later found,

". . . an offer was made to the plaintiffs [appellant] that if they would settle this case a duplicate boiler would be furnished for the total sum of $3,250.00."

The trial court then gave the parties two weeks to see if they could reach a settlement.

The next day, the parties went to the Walla Walla Airport to look at a "Titusville" brand boiler, purportedly owned at the time by one L. R. Hurst. Actually, Hurst did not own the boiler. It was owned by the Airport. Hurst merely had paid $100 for an option to purchase it for $1,000. The appellant took no action on the respondent's settlement offer. About September 20, respondent's counsel called appellant's counsel and told him that the offer must be accepted within a few days or it would be withdrawn. About October 1, he called the trial judge and asked him to go ahead and decide the case.

In November, the appellant called Hurst and told him that he was interested in buying the "Titusville" boiler if

it was still available. After some dickering, the parties agreed upon a price of $3,250. The appellant then drew up a contract and sent it and a check for $1,500 to Hurst. The check was promptly cashed. In a later telephone conversation, Hurst expressed some dissatisfaction with the contract, and the appellant instructed him to change the contract to suit himself. Hurst made some changes (not here material), signed the contract, and sent it back to the appellant, who also signed it. The final contract specified that the appellant was to pay $3,250 for the boiler; $1,500 down (already received by Hurst), and the balance after delivery and inspection. *No mention is made in the contract regarding settlement of the pending lawsuit.*

On January 7, 1959, the lawsuit, as mentioned above, was dismissed by the trial court on the ground of settlement.

■ We think that the trial court erred in finding that the contract between the appellant and Hurst constituted a settlement of the Kinne v. Lampson lawsuit. There is no showing that the appellant ever accepted the terms of the respondent's settlement offer. Appellant's silence after the respondent's purported offer of settlement cannot be construed as an acceptance. *Troyer v. Fox* (1931), 162 Wash. 537, 298 Pac. 733, 77 A. L. R. 1132. *Cf.* also 77 A. L. R. 1141. Knowing that Hurst still had the option to buy the "Titusville" boiler, appellant Kinne negotiated with him directly. Hurst had full opportunity to bring the respondent Lampson back into the negotiations at any time he chose to do so, but he never did. The facts surrounding the transaction can lead to no other conclusion than that the appellant, having rejected the respondent's purported offer, made an independent offer to Hurst, which was duly accepted.

■ The relationship between Hurst and the respondent is not made entirely clear by the record. Apparently, the respondent had, in the past, done certain favors for Hurst, who was willing to reciprocate by making available to the appellant a "good buy" on the boiler (allegedly worth $4,-

600). It is abundantly clear, however, that respondent Lampson never had any proprietary interest in the boiler; and, consequently, any interest which he would have in the contract between Hurst and appellant Kinne would have to be as a third party donee beneficiary. In this state a third party beneficiary may enforce a contract. *Grand Lodge v. United States F. & G. Co.* (1940), 2 Wn. (2d) 561, 98 P. (2d) 971. However, he can enforce the contract only to the extent that it is enforcible by the promissee, Hurst, and any defenses available against Hurst are also available against the respondent. *Cf. Merriman v. Maryland Cas. Co.* (1928), 147 Wash. 579, 266 Pac. 682, 58 A. L. R. 1194. See, also, annotation at 81 A. L. R. 1292.

It is clear from the negotiations of Hurst and the appellant that the resulting contract was intended to be an integrated contract incorporating all of the terms agreed upon. Hurst had full opportunity to change the contract in any way he chose. Nevertheless, he did not add to the contract that the consideration included the appellant's dropping the action against the respondent and waiving refund of the $1,000 down payment on the first boiler. Only if the terms of that contract had so provided, could it operate as a settlement between the appellant and respondent. It is a well established rule that, with certain exceptions, parol evidence is not admissible to vary the terms of a written contract. *Fleetham v. Schneekloth* (1958), 52 Wn. (2d) 176, 324 P. (2d) 429; and cases cited therein. The respondent, however, argues that "evidence to show the true consideration for a contract has always been held to be an exception to the parol evidence rule."

■ Parol evidence has been held to be admissible to show what the true consideration is where the contract contains a mere recital of consideration (*e.g.,* "one dollar and other valuable consideration") as contrasted to contracts in which the stated consideration is a "contractual element" of the contract. *Union Machinery v. Darnell* (1916), 89 Wash. 226, 154 Pac. 183; *Spokane Canal Co. v. Coffman* (1910), 61 Wash. 357, 112 Pac. 383. *Cf. Roberts v.*

*Stiltner* (1918), 101 Wash. 397, 172 Pac. 738; *Kelley v. Smith* (1918), 101 Wash. 475, 172 Pac. 542; see, also, annotation at 100 A. L. R. 17. Parol evidence is also admissible to show any consideration which is consistent with the stated consideration; in *Roberts v. Stiltner, supra*, the purchaser was allowed to show that the seller had accepted property worth $2,700 in lieu of the $2,700 cash consideration stated in the contract.

█ In the instant case none of the factors necessary to vary the stated consideration by parol evidence is present. The consideration, the purchase price of the boiler, is spelled out precisely, including the installments in which it is to be paid. It is clearly made a "contractual element" of the agreement. Since the contract did not specify that it operated as a settlement of the lawsuit, and since it cannot be varied by parol evidence, the trial court erred in granting respondent's motion to dismiss the case on grounds of settlement.

The judgment of the trial court dismissing the action is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. The appellant shall recover his costs.

HILL, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

---

December 21, 1961. Petition for rehearing denied.